1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PAUL GEORGE STEVENSON,              No.  2:19-cv-00243 CKD

12              Plaintiff,

13         v.                             ORDER &

14    ANDREW SAUL, Commissioner of Social  FINDINGS AND RECOMMENDATIONS
      Security,
15
                Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    ("Commissioner") denying an application for disability insurance benefits under Title II of the

20    Social Security Act ("Act").  For the reasons discussed below, the undersigned Magistrate Judge

21    will recommend that plaintiff's motion for summary judgment be denied and the Commissioner's

22    cross-motion for summary judgment be granted.

23    BACKGROUND

24         Plaintiff, born in 1973, applied in 2015 for disability insurance benefits, alleging disability

25    beginning March 15, 2014.  Administrative Transcript ("AT") 16, 29.  Plaintiff alleged he was

26    ////

27    ////

28    ////

                                            1

1     unable to work due to myasthenia gravis[1], right knee impairment, sarcoidosis[2], other skin

2     disorders, anxiety, left knee, impairment sleep apnea, interstitial lung disease, Graves' disease[3],

3     and bone loss.  AT 133, 138.  In a decision dated February 13, 2018, the ALJ determined that

4     plaintiff  was not disabled.[4]  AT 16-30.  The ALJ made the following findings (citations to 20

---

[1] Myasthenia gravis is characterized by weakness and rapid fatigue of any of the muscles under one's voluntary control. It is caused by a breakdown in the normal communication between nerves and muscles.  Mayo Clinic, *available at* https://www.mayoclinic.org/diseases-conditions/myasthenia-gravis/symptoms-causes/syc-20352036 (last accessed June 19, 2020).

[2] Sarcoidosis is characterized by the growth of tiny collections of inflammatory cells (granulomas) in any part of one's body — most commonly the lungs and lymph nodes. The cause of sarcoidosis is unknown, but experts think it results from the body's immune system responding to an unknown substance.  Mayo Clinic, *available at* https://www.mayoclinic.org/diseases-conditions/sarcoidosis/symptoms-causes/syc-20350358 (last accessed June 19, 2020).

[3] Graves' disease is an immune system disorder that results in the overproduction of thyroid hormones (hyperthyroidism).  Thyroid hormones affect many body systems, so signs and symptoms of Graves' disease can be wide ranging.  Mayo Clinic, *available at* https://www.mayoclinic.org/diseases-conditions/graves-disease/symptoms-causes/syc-20356240 (last accessed June 19, 2020).

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520,  404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional

C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity during the period from his alleged onset date of March 15, 2014 through his date last insured of December 31, 2016.
>
> 3. Through the date last insured, the claimant had the following severe impairments: obstructive sleep apnea and interstitial lung disease.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except the claimant could lift and/or carry 20 pounds occasionally and frequently; he could stand and or walk for at least six hours in an eight hour workday; he could sit for at least six hours in an eight hour workday; he could occasionally push and or pull with his lower extremities; he could occasionally climb ramps and stairs; he could frequently balance and stoop; he could occasionally kneel, crouch, and crawl; he would have needed to avoid concentrated exposure to extreme cold, extreme heat, odors, dust, smoke, gases, and poor ventilation; he could never climb ladders, ropes or scaffolds; and he would have needed to avoid exposure to unprotected heights and hazardous machinery.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work.
>
> 7. The claimant was born on XX/XX/1973 and was 43 years old, which is defined as a younger individual age 18-49, on the date last insured.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

---

> capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3

1
2
3
> 10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

4
5
> 11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from March 15, 2014, the alleged onset date, through December 31, 2016, the date last insured.

6   AT 19-30.

7   ISSUES PRESENTED

8
9
10
Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ failed to properly weigh the opinion of a treating physician; and (2) the ALJ's hypothetical question to the vocational expert did not incorporate all plaintiff's limitations.

11   LEGAL STANDARDS

12
13
14
15
16
17
18
19
20
21
22
The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

23
24
25
26
27
28
The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability

4

1    or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

2    1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

3    weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

4    ANALYSIS

5         Plaintiff asserts that the ALJ committed reversible error in discounting the opinion of a

6    treating physician as to limitations in walking, sitting, standing, and lifting; the ability to sustain

7    concentration; the need for additional unscheduled breaks; and absence from work more than

8    three times per month.  (ECF No. 13-1 at 15.)  As discussed below, the ALJ partially credited

9    pulmonologist Dr. Yim's August 2017 assessment, but gave the majority of the opinion "reduced

10   weight."  AT 26.

11        The ALJ summarized Dr. Yim's opinion as follows:

12            The claimant's treating physician, Michael Yim, M.D., completed a
              Pulmonary Impairment Questionnaire dated August 30, 2017.  Dr.
13            Yim indicated that he has seen the claimant every six months from
              his first treatment visit in November 2011, and through his most
14            recent examination on July 12, 2017.  Dr. Yim stated that the
              claimant's medical conditions are asthma and history of interstitial
15            lung disease.  Dr. Yim further noted that the claimant has a history
              of obstructive sleep apnea, which was probably worse when the
16            claimant weighed more; however, because the claimant has lost
              weight, it is not currently a factor.  Dr. Yim also reported that the
17            claimant has alleged symptoms of severe asthma, such as shortness
              of breath and chest tightness, which occur every two weeks but are
18            relieved with albuterol.  However, Dr. Yim also noted that the
              claimant has not required physician intervention or hospitalization
19            for more than 24 hours to resolve and/or control these attacks.

20            Dr. Yim opined that the claimant can sit for three to four hours in an
              eight hour day; he can stand or walk for one to two hours in an eight
21            hour day; he can never lift any weight but can occasionally carry up
              to five pounds; and he would need to avoid odors, fumes, temperature
22            extremes,  humidity,  dust,  perfumes,  gases,  solvents/cleaners,
              cigarette smoke, soldering/fluxes, and chemicals.  Dr. Yim further
23            opined that the claimant has responded well to treatment in that he is
              off oxygen and his medications have been tapered to lower doses.
24            Dr. Yim also opined that the claimant's symptoms would
              occasionally interfere with attention and concentration in an eight
25            hour workday; he would need unscheduled breaks every three hours
              for 30 to 45 minutes each time, and he would likely, on average, be
26            absent from work more than three times per month.  Dr. Yim opined
              that the claimant has had these limitations as far back as March 15,
27            2014.

28   AT 25, citing AT 962-967.

1    The ALJ next explained her decision to only partially factor Dr. Yim's opinion into the

2  residual functional capacity (RFC) assessment:

3
> Generally, a treating physician's opinion is given more weight
> because it is more likely to be based on a detailed, longitudinal
4  picture of the claimant's impairments, and although Dr. Yim has a
> significant treatment history with the claimant, it has also been
5  sporadic in that he only sees him about twice per year. In addition,
> the majority of Dr. Yim's opinion is inconsistent with the record as
6  a whole, as discussed above, as well as internally inconsistent and
> not supported by objective findings. It also appears that Dr. Yim has
7  relied heavily on the subjective report of symptoms and limitations
> provided by the claimant[5], as for example, with regard to the
8  claimant's report of asthma attacks every two weeks. However,
> these attacks are not supported by the medical evidence of record and
9  as noted above, the claimant has not had any emergency room visits
> and/or hospitalizations due to asthma.

10
> In addition, although Dr. Yim noted that the claimant underwent an
11  open lung biopsy in March 2012, which suggested sarcoidosis or
> berryliosis, subsequent medical evidence of record since the
12  claimant's alleged onset date of March 15, 2014, has indicated that
> the etiology is unclear, but that the claimant likely does not have
13  berryliosis, and the diagnosis of sarcoidosis has not been confirmed.[6]

14
> In addition, as noted above, testing at UCSF noted the claimant as
15  negative for asthma, which was also noted by Dr. Yim in his
> treatment note of September 3, 2015.[7] Further, as discussed above
> and also noted by Dr. Yim, the claimant has reported improvement
16  in his symptoms and has responded well to his medications.[8]
> Additionally, there are minimal objective findings to support Dr.
17  Yim's limitations for sitting and standing[9], or for reduced attention
> and concentration.[10] Dr. Yim did not order any further diagnostic

18

19  [5] In an unchallenged finding, the ALJ found plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms less than fully credible. AT 23-24.

20

21  [6] Citing AT 432, 434 (August 2013 progress notes by Dr. Yim that etiology was "unclear after lung biopsy").

22  [7] Citing AT 408 (September 2015 progress note by Dr. Yim that plaintiff had tested negative for
23  asthma).

24  [8] See AT 966-967 (August 2017 note by Dr. Yim that plaintiff had responded well to treatment and was off oxygen, with his medications tapered to lower doses).
25

26  [9] See, e.g., AT 20 (noting that, despite plaintiff's June 2015 complaint of right knee pain, examination showed only mild tenderness, and x-rays showed only mild medial osteoarthritis,
27  with little evidence of treatment or follow-up), citing AT 415, 417.

28  [10] See AT 21 (in December 2015 consultative psychiatric examination, Dr. M. Giannuli opined

6

1
2

> testing while still advancing these diagnoses and limitations.  For these reasons, the majority of Dr. Yim's opinion is given reduced weight.

3
4
5
6

> However, Dr. Yim's opinion that the claimant must avoid odors, fumes, temperature extremes, humidity, dust, perfumes, gases, solvent/cleaners, cigarette smoke, soldering/fluxes, and chemicals is consistent with the record as a whole, as well as internally consistent.  For these reasons, this portion of Dr. Yim's opinion is given significant weight.

7   AT 26.

8         The weight given to medical opinions depends in part on whether they are proffered by

9   treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

10   1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a

11   greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80

12   F.3d 1273, 1285 (9th Cir. 1996).

13         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

14   considering its source, the court considers whether (1) contradictory opinions are in the record,

15   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

16   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

17   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

18   rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at

19   830.  While a treating professional's opinion generally is accorded superior weight, if it is

20   contradicted by a supported examining professional's opinion (e.g., supported by different

21   independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala , 53 F.3d

22   1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

23   any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

24   findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory,

25   minimally supported opinion rejected); see also Magallanes , 881 F.2d at 751.  The opinion of a

26

27   that plaintiff was unimpaired in all areas of functioning and had no psychiatric diagnosis, no
record of mental health treatment, and had not been prescribed psychiatric medications), citing
28   AT 474-481.

1    non-examining professional, without other evidence, is insufficient to reject the opinion of a

2    treating or examining professional.  Lester, 81 F.3d at 831.

3         Here, the ALJ partially credited the opinions of state agency medical consultants Dr. P.A.

4    Talcherkar and Dr. Alan J. Coleman, who completed Physical Residual Functional Capacity

5    assessments in 2016 after reviewing plaintiff's medical records.  AT 26-27.  See Saelee v. Chater,

6    94 F.3d 520, 522 (9th Cir. 1996) ("the findings of a nontreating, nonexamining physician can

7    amount to substantial evidence, so long as other evidence in the record supports those findings").

8         Dr. Talcherkar opined that plaintiff could lift or carry 20 pounds occasionally and 10

9    pounds frequently; could stand and walk for a total of four hours in an eight-hour workday; could

10   sit for a total of six hours in an eight-hour workday; was limited to occasional pushing and pulling

11   with his lower extremities; could occasionally climb ramps, stairs, ladders, ropes, or scaffolds;

12   could frequently balance and stoop; could occasionally kneel, crouch, and crawl; and must avoid

13   exposure to certain environmental conditions and hazards.  AT 108-110.  The ALJ concluded that

14   "the majority of [Dr. Talcherkar's] opinion is consistent with the record as a whole, as well as

15   with the claimant's activities of daily living.  As discussed above, the claimant has received

16   minimal treatment for his alleged physical impairments, with minimal objective findings.[11]  In

17   addition, the claimant has described activities of daily living that include walking his dog, doing

18   some household chores, shopping in stores, driving a car, and taking care of his personal needs.[12]"

19   AT 27.  The ALJ further concluded that certain limitations opined by Dr. Talcherkar were

20   "inconsistent with the record as a whole, and not supported by objective findings."  AT 27.

21        Agency physician Dr. Coleman opined that plaintiff could lift or carry 25 pounds

22   occasionally and 20 pounds frequently; could stand or walk six hours in an eight-hour workday;

23   could sit for six hours in an eight-hour workday; was unlimited in pushing or pulling; could

24   occasionally climb ramps, stairs, ladders, ropes, or scaffolds; could frequently balance and stoop;

25   could occasionally kneel, crouch, and crawl; and must avoid exposure to certain environmental

26

27   [11] See AT 19-21, 24-25.

28   [12] See AT 23, citing AT 314-327.

8

1   conditions and hazards.  AT 124-126.  The ALJ concluded that "the majority of his opinion is

2   consistent with the record as a whole, as well as with the claimant's activities of daily living."

3   AT 27.  The ALJ discounted certain of Dr. Coleman's opined limitations, noting that the RFC

4   "generously considers the claimant's subjective complaints.  For these reasons, portions of Dr.

5   Coleman's opinion are given reduced weight."  AT 27.  The credited portions of the opinions of

6   Dr. Talcherkar and Dr. Coleman constitute substantial evidence in support of the ALJ"s rejection

7   of portions of the treating physician's opinion.

8          Plaintiff asserts that Dr. Yim's opined physical limitations are supported by the record,

9   including notes that plaintiff at times experienced chest pain, tightness in the chest, and coughing.

10  See AT 522-523, 677.  However, plaintiff does not explain why this evidence should have

11  resulted in a more restrictive RFC than light work.  Based on the foregoing, the undersigned

12  concludes that the ALJ provided specific and legitimate reasons to reject portions of the treating

13  physician's opinion, supported by substantial evidence.

14         Because plaintiff's second claim asserts that the ALJ did not incorporate Dr. Yim's opined

15  limitations into the hypothetical posed to the vocational expert, and thus is based on the success

16  of the first claim, it too must fail.  See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001)

17  ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported

18  by substantial evidence in the record.") (citation omitted).

19  CONCLUSION

20         IT IS HEREBY ORDERED that the Clerk of Court assign a district judge to this action.

21         For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

22         1.  Plaintiff's motion for summary judgment (ECF No. 13) be denied;

23         2.  The Commissioner's cross-motion for summary judgment (ECF No. 22) be granted;

24         3.  Judgment be entered for the Commissioner.

25         These findings and recommendations are submitted to the United States District Judge

26  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

27  after being served with these findings and recommendations, any party may file written

28  objections with the court and serve a copy on all parties.  Such a document should be captioned

9

1    "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

2    within the specified time may waive the right to appeal the District Court's order.  Martinez v.

3    Ylst, 951 F.2d 1153 (9th Cir. 1991).

4    Dated:  July 1, 2020

5                                                                    _____
                                                                     CAROLYN K. DELANEY
6                                                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10   2/stevenson0243.ssi.ckd_f&rs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28